2008 WY 53

**PBS ENTERPRIZES, INC.,**
**Appellant (Defendant),**

v.

**CWCAPITAL ASSET MANAGEMENT LLC as Successor to Criimi Mae Services Limited Partnership, as Special Servicer for Lasalle Bank National Association, as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Passthrough Certificates, Series 1997–C1, Appellee (Plaintiff).**

Nos. S–07–0024, S–07–0251.

Supreme Court of Wyoming.

May 9, 2008.

Representing Appellant: Timothy Charles Kingston, Graves, Miller & Kingston, PC, Cheyenne, Wyoming.

Representing Appellee: Colin MacKenzie Simpson, Burg, Simpson, Eldredge, Hersh & Jardine, PC, Cody, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶1]   In the first of these two consolidated cases, PBS Enterprizes, Inc., appeals the district court's entry of summary judgment in favor of CWCapital Asset Management, LLC, in CWC's foreclosure action against PBS. In its second appeal, PBS challenges the district court's confirmation of the foreclosure sale, which took place while the first appeal was pending before this Court. We will affirm the district court's actions in both cases.

## ISSUES

[¶2]   PBS lists four issues in its initial appeal. Slightly reworded, they are as follows:

1. Did PBS default on a promissory note given to CWC?

2. Was CWC prevented from claiming that PBS was in default because: (a) CWC incorrectly applied PBS's payments under the promissory note, or (b) CWC agreed to a modification of PBS's payment obligations?

3. Did CWC's failure to provide PBS a correct payoff amount under the promissory note constitute actionable negligent or intentional misrepresentation?

4. When the district court considered CWC's motion for summary judgment, did it commit reversible error by not finding that there were genuine issues of material fact as to whether PBS was in default on the promissory note and whether CWC had committed negligent or intentional misrepresentation?

In its second appeal, PBS raises this issue, also reworded as follows:

5. Did PBS's first appeal deprive the district court of jurisdiction to consider and rule on CWC's post-appeal motion to confirm the foreclosure sale and enter a deficiency judgment?

CWC states the issues differently, but presents the same questions.

## FACTS

[¶3]   PBS owned and operated two hotels, one in Cody, Wyoming, and another in Norfolk, Nebraska. The financial arrangements between PBS and CWC were complicated, and for our purposes, it is sufficient to summarize them briefly. CWC held PBS's promissory note secured by the "Norfolk mortgage" on the Norfolk property. CWC also held promissory notes secured by two "Cody mortgages" on the Cody property. In addition, the Cody mortgages included cross-default provisions such that a default under the Norfolk mortgage was also a default under the Cody mortgages. One of the Cody mortgages, for example, specified that it "shall be an Event of Default hereunder and the debt secured hereby shall become immediately due, at the option of [CWC], upon the occurrence of ... an Event of Default, as

that term is or shall be defined in [the Norfolk] Mortgage."

[¶ 4] In 2004, CWC foreclosed on the Norfolk mortgage in Nebraska state court. PBS did not contest this foreclosure. After the Nebraska foreclosure was completed, a deficiency remained.

[¶ 5] In 2006, CWC filed in Wyoming state court to foreclose on the Cody mortgages and to recover the deficiency from the Norfolk mortgage. PBS opposed this foreclosure, claiming that the parties' prior conduct had established a payment schedule different from that set forth in the Cody mortgages' documents. Under the altered payment schedule, PBS asserted, it was not in default. PBS also raised two counterclaims, negligent and intentional misrepresentation, alleging that CWC had engaged in a pattern and practice of misrepresenting to PBS the correct amounts due under the mortgages.

[¶ 6] The district court entered summary judgment, ruling in favor of CWC on the foreclosure of the Cody mortgages, and against PBS on its counterclaims. PBS appealed the summary judgment order. While that appeal was pending, CWC proceeded with the foreclosure, and eventually asked the district court to confirm the foreclosure sale and enter a deficiency judgment against PBS. PBS's second appeal asserts that, because its first appeal was pending before this Court, the district court lacked jurisdiction to confirm the foreclosure sale.

## STANDARD OF REVIEW

[¶ 7] Summary judgment is properly granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). Our standard when reviewing a district court's grant of summary judgment is familiar:

> [T]he propriety of a summary judgment [is evaluated] by employing the same standards and by examining the same material as the district court. We examine *de novo* the record, in the light most favorable to the party opposing the motion, affording to that party the benefit of all favorable infer

ences that may be drawn from the record. If upon review of the record, doubt exists about the presence of issues of material fact, that doubt must be resolved against the party seeking summary judgment. We accord no deference to the district court's decisions on issues of law.

*Linton v. E.C. Cates Agency, Inc.*, 2005 WY 63, ¶ 7, 113 P.3d 26, 28 (Wyo.2005) (internal citations omitted); *Glenn v. Union Pac. R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).

## DISCUSSION

### Default

[¶ 8] In opposition to CWC's motion for summary judgment, PBS maintained that it was not in default under the Cody mortgages. It claimed that representatives of PBS and CWC had reached a mutual agreement to alter the payment schedule set forth in the Cody mortgages. According to PBS, CWC "explicitly agreed that PBS did not have to make full monthly payments ... during the non-peak months of the year," and that "PBS could make additional and lump sum payments during the peak summer months to make up for the prior period of each year when payments were reduced." PBS further asserted that it had made payments on this seasonal schedule from 1997 through 2003, and that CWC had always accepted such payments without imposing additional interest or penalties, and without declaring PBS in default. PBS maintained that it continued making payments in accordance with the altered schedule, but that CWC, without notice or explanation, claimed that PBS was in default.

[¶ 9] There are two illustrative Wyoming cases dealing with mutual agreements to vary the terms of a written contract. Both rely on the concept that:

> As a general rule, if the parties mutually adopt a mode of performing their contract differing from its strict terms or if they mutually relax its terms by adopting a loose mode of executing it, neither party can go back upon the past and insist upon a breach, because it was not fulfilled according to its letter.

*Quin Blair Enterprises, Inc. v. Julien Construction Co.,* 597 P.2d 945, 951 n. 6 (Wyo. 1979) (emphasis removed); *Schuler v. Community First Nat'l Bank,* 999 P.2d 1303, 1305 n. 1 (Wyo.2000). Applying this general rule, however, the cases reached different results. In the first, "there was never any *mutual* agreement" to change the contract, only "unilateral disregard" of certain contract terms. *Quin Blair,* 597 P.2d at 951 n. 6 (emphasis in original). We therefore enforced the contract as written. In the second, there was unchallenged evidence that the parties had made an oral agreement to change the contract terms, and they had taken actions consistent with the altered terms. *Schuler,* 999 P.2d at 1305. We therefore affirmed the trial court's summary judgment enforcing the terms of the new oral agreement.

[¶ 10] The facts presented by PBS in opposition to CWC's motion for summary judgment supported its contention that the parties had mutually agreed to vary the payment schedule under the Cody mortgages, and that they acted in conformity with the altered schedule. Viewed favorably to PBS, these facts are more like those in *Schuler,* in which the altered terms of the oral agreement were enforced. By themselves, these facts would raise genuine issues of material fact sufficient to justify the denial of CWC's motion for summary judgment. However, there are two additional facts that support the district court's decision to grant summary judgment to CWC.

[¶ 11] First, the Cody mortgages provided that a default on the Norfolk mortgage also constituted a default under the Cody mortgages. It is undisputed that PBS defaulted on the Norfolk mortgage. PBS did not contest CWC's foreclosure on that mortgage in Nebraska state court. Regardless of whether the parties agreed to change the payment schedule under the Cody mortgages, PBS's default under the Norfolk mortgage also put it in default under the Cody mortgages.

[¶ 12] Second, when the two parties engaged in negotiations in an effort to avoid foreclosure, they entered into a "Pre–Negoti-ation Agreement" that provided, in part, as follows:

> [PBS] acknowledges that the loan is in monetary default under the Loan Documents and that the Norfolk Loan and the Cody Mortgage and Guaranty [are] in default. [PBS] hereby acknowledges and agrees that there have been no modifications to the Loan Documents and the Cody Mortgage and Guaranty[,] and the Loan Documents and the Cody Mortgage and Guaranty constitute all of the agreements among [CWC and PBS,] and the Loan Documents and the Cody Mortgage and Guaranty continue to constitute [PBS's] legal and enforceable obligations.

In this document, PBS conceded that there were no modifications to the written agreement and affirmed that the written documents continued to define PBS's legal and enforceable obligations. Moreover, PBS explicitly acknowledged that it was in default. Given this admission by PBS, the district court did not err in ruling that PBS was in default under the Cody mortgages.

### Negligent or Intentional Misrepresentation

[¶ 13] PBS also appeals the district court's grant of summary judgment against PBS's counterclaims of negligent and intentional misrepresentation. Both claims, PBS asserts, are based on CWC's "persistent failure, either intentional or negligent, to provide [PBS] with a correct and accurate pay off amount" on the Cody mortgages. PBS asserts that, because CWC provided "wildly inaccurate or greatly different pay off numbers," PBS lost opportunities to sell the Cody hotel at a price that would have allowed PBS to pay off all of its obligations to CWC.

[¶ 14] Both intentional misrepresentation and negligent misrepresentation are tort claims. *Birt v. Wells Fargo Home Mortgage, Inc.,* 2003 WY 102, ¶ 42, 75 P.3d 640, 656 (Wyo.2003); *Pinther v. Ditzel,* 2007 WY 116, ¶ 11, 163 P.3d 816, 818 (Wyo.2007). In contrast, the relationship between PBS and CWC, as borrower and lender, was contractual in nature. *Martinez v. Associates Financial Services Co.,* 891 P.2d 785, 788–89 (Wyo.1995). "We have been exceedingly reluctant to introduce tort principles into

claims that are essentially contract actions." *Hulse v. First American Title Co.,* 2001 WY 95, ¶ 55, 33 P.3d 122, 139 (Wyo.2001). More particularly, "we have been rightfully hesitant to find tort causes of action where a contract exists." *Lee v. LPP Mortgage Ltd.,* 2003 WY 92, ¶ 27, 74 P.3d 152, 162 (Wyo. 2003). That is because "the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon." *Snyder v. Lovercheck,* 992 P.2d 1079, 1087 (Wyo.1999).

[¶ 15] PBS complains that CWC misrepresented amounts due under the Cody mortgages, alleging in its Answer and Counterclaim that CWC "had a duty to provide information to [PBS] so that [PBS] might correctly determine the amount owed by [PBS]." PBS has not identified the source of CWC's duty. Our review of the record shows that, contrary to PBS's allegation, the Cody mortgages assign that duty to PBS, not CWC:

> After request by Lender [CWC], Borrower [PBS], within fifteen (15) days and at its expense, will furnish Lender [CWC] with a statement, duly acknowledged and certified, setting forth (a) the amount of the original principal amount of the Note, and the unpaid principal amount of the Note, (b) the rate of interest of the Note, (c) the date payments of interest and/or principal were last paid, [etc.].

It is probably more common for the lender to perform accounting functions associated with a mortgage. In this case, however, the amount owed under the Cody mortgages at any given time depended, in part, on a complicated formula involving PBS's net worth. Because PBS had better access to this financial information, the parties apparently agreed that PBS, not CWC, should determine the amount owed under the Cody mortgages.

[¶ 16] Whatever the explanation for this provision of the Cody mortgages, it unambiguously places the duty on PBS, not CWC, to calculate the amount owed. "It is well established in Wyoming that when parties reduce a contract to writing, they must abide by its plainly stated terms." *Snyder,* 992 P.2d at

1089. Where the parties agreed by contract to allocate a specified duty to one party, that duty may not be shifted to the other party by asserting a tort claim.

[¶ 17] Because PBS failed to establish that CWC had any duty to provide it with figures for the amount owed under the Cody mortgages, PBS cannot sustain its intentional or negligent misrepresentation claims against CWC. This does not mean that intentional or negligent misrepresentation claims may never be maintained by a borrower against a lender, or by others whose relationships are defined by contract. Our precedent suggests circumstances in which such tort claims may be viable. *See, e.g., Martinez,* 891 P.2d at 789 (Lender's extra-contractual duties might be predicated upon a special or fiduciary relationship.); *Hulse,* ¶ 57, 33 P.3d at 139–40 (Extra-contractual duties may arise when applicable statutes impose affirmative tort duties.). In this case, however, the contract imposed the duty on PBS to provide figures on the amounts due under the Cody mortgages. PBS may not reallocate that contractual duty to CWC in a tort claim. On this basis, the district court correctly granted summary judgment against PBS's counterclaims.

### Confirmation of Foreclosure Sale

[¶ 18] While PBS's initial appeal was pending before this Court, CWC proceeded with the foreclosure sale. It then filed a motion asking the district court to confirm the foreclosure sale and enter a deficiency judgment against PBS. The district court granted the motion. In PBS's second appeal, it asserts that the district court did not have jurisdiction over CWC's motion because of the pending appeal. PBS refers to W.R.A.P. 6.01(b), which provides as follows:

> The appellate court shall acquire jurisdiction over the matters appealed when the case is docketed. In all cases, the trial court retains jurisdiction over all matters and proceedings not the subject of the appeal.

[¶ 19] Our cases applying this rule often involve domestic relations issues. We have held that a district court retains jurisdiction to determine permanent guardianship even

while its decision on temporary guardianship was under appeal, *In re Guardianship of MEO*, 2006 WY 87, ¶ 13 n. 6, 138 P.3d 1145, 1150 n. 6 (Wyo.2006), and that a district court retains jurisdiction to consider visitation and support even though its decision establishing paternity was under appeal. *In re Paternity of IC*, 941 P.2d 46, 50–51 (Wyo.1997). In *Moore v. Moore*, 809 P.2d 255, 258 (Wyo. 1991), we stated that "a district court has the right and the power, during the pendency of an appeal, to enforce its decree and to protect the parties as to any rights which the decree gave to them."

[¶ 20] In this case, the district court retained the right and the power to enforce its decree that CWC was entitled to foreclose against PBS, even though that decision had been appealed. Significantly, PBS did not seek to stay the district court's order, as it could have done pursuant to W.R.C.P. 62(d). Absent such a stay, the district court did not exceed its authority to enforce the judgment by confirming the foreclosure sale and entering a deficiency judgment against PBS.

## CONCLUSION

[¶ 21] The district court properly granted summary judgment to CWC in its foreclosure action against PBS, and properly granted summary judgment against PBS's counterclaims. The district court also had jurisdiction to confirm the foreclosure sale. We affirm the district court in all respects.