# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 64

APRIL TERM, A.D. 2014

May 20, 2014

BLACK DIAMOND ENERGY, INC., a
Delaware Corporation,

Appellant
(Plaintiff),

v.                                                          S-13-0151

ENCANA OIL AND GAS (USA) INC., a
Delaware Corporation,

Appellee
(Defendant).

*Appeal from the District Court of Johnson County*
The Honorable John G. Fenn, Judge

*Representing Appellant:*
> Greg L. Goddard, Goddard, Wages & Vogel, P.C., Buffalo, Wyoming; J. David Jorgenson, Sneed Lang PC, Tulsa, Oklahoma. Argument by Mr. Jorgenson.

*Representing Appellee:*
> Darin B. Scheer, Farson, Wyoming; Erin K. Murphy, Bjork Lindley Little PC, Denver, Colorado. Argument by Mr. Scheer.

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*Justice Voigt retired effective January 3, 2014.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Chief Justice.**

[¶1] Black Diamond Energy, Inc. (BDE) brought a breach of contract action against Encana Oil and Gas (USA) Inc. (Encana). Encana counterclaimed. After a trial, the jury found BDE breached the contract but awarded Encana no damages. BDE appeals claiming the district court erred in giving a breach of contract instruction and verdict form that did not fit the facts of this case. BDE also claims the district court erred in excluding its expert testimony and reports, and evidence involving a well in a different oil and gas unit. We affirm.

## ISSUES

[¶2]    Restated, the issues BDE asks the Court to consider are:

     A.    Whether, under the circumstances of this case, the District Court erred by instructing the jury that when a party materially breaches the contract the other party is not required to continue to perform the contract.

     B.    Whether, under the circumstances of this case, the District Court erred by giving the jury a verdict form requiring it to find which party breached the contract first.

     C.    Whether the district court erred in excluding BDE's expert witness testimony and reports on damages.

     D.    Whether the district court erred in excluding evidence concerning Encana's failure to apply surplus funds paid on a well in another unit to BDE's shortfalls on well expenses in the unit covered by the contract in this case.

## FACTS

[¶3] BDE is a Delaware corporation with its principal place of business in Buffalo, Wyoming. Encana is a Delaware corporation with its principal place of business in Denver, Colorado. In August of 2006, BDE and Encana entered into a farmout agreement (FOA) involving the development of oil and gas interests in Sublette County, Wyoming.

[¶4] Pursuant to the FOA, BDE was to cause wells to be drilled on land located in the Crimson Unit on which Encana owned undivided working interests to oil and gas leases. In exchange for exploring the lands for oil and gas, BDE was to earn working interests in the Encana leases. Encana was to act as well operator on the initial test well in the unit, meaning that it would perform the drilling, completion and production or plugging and abandoning operations. BDE was required to pre-pay Encana $1.4 million toward the costs of drilling the initial test well. After the initial test well, BDE had the option to act as well operator on the additional wells or could request that Encana act as well operator.

1

In either event, the FOA required BDE to pay the full costs of the drilling and completion operations for the eight test wells up to an amount specified in the FOA.[1]

[¶5]  Paragraph 1 of the FOA required BDE to meet several minimum requirements in order to earn working interests in the Encana leases.  BDE was to:

> A.  Cause a minimum of eight test wells to be drilled and completed as a producer or plugged and abandoned;
>
> B.  Spend at least $12 million on the drilling and completion of the test wells;
>
> C.  Locate one test well in each of four designated quadrants within the unit;
>
> D.  Commence the first test well by September 30, 2006, and each subsequent well within 120 days of the last well commenced;
>
> E.  Adhere to all material financial obligations under the FOA and the Crimson Unit Operating Agreement.

[¶6]  Upon meeting all of these requirements, BDE's right to earn an interest in the Encana leases would vest.  BDE could then make a written request to Encana for an assignment of earned leasehold interest.  If Encana was satisfied that BDE's interest had vested and if BDE had complied with all other provisions of the FOA, Encana was required to assign to BDE fifty percent of Encana's leasehold interest throughout the entire Crimson Unit to the base of the Lance formation.[2]

[¶7]  The FOA also provided, however, that BDE's interest could vest even if BDE failed to meet requirements D or E.[3]  In that event, upon receipt of BDE's written request for assignment and presentation of satisfactory evidence that each test well had been completed, and provided that BDE had complied with other provisions of the FOA,

---

[1] In the event BDE elected to have Encana act as well operator, the FOA provided that if costs exceeded $1.5 million on a particular test well, Encana would pay fifty percent of the excess costs from $1.5 million to $2 million and 100% of excess costs above $2 million.  If costs reached or exceeded $2.5 million, Encana had the discretion to plug and abandon the test well.

[2] The FOA required test wells to be drilled to the base of the Lance Pool or to such depth as necessary to thoroughly test the Lance formation.  Accordingly, the 50% interest assigned to BDE was to the base of the Lance formation.

[3] Although not at issue here, the FOA also provided that if BDE met requirements A and B but did not meet requirement C, BDE's interest would not vest in the entire Crimson Unit but only in the drilled test blocks.

Encana was to assign to BDE fifty percent of Encana's leasehold interest in the test blocks[4] in which test wells had been drilled.

[¶8] Pursuant to the terms of the FOA, BDE prepaid $1.4 million for the initial test well and Encana drilled and completed it. Thereafter, BDE exercised its option and requested that Encana act as well operator on the remaining test wells. In accordance with the terms of the FOA, Encana charged BDE for the costs it incurred in drilling and completing the test wells and BDE was required to remit payment to Encana.

[¶9] By December of 2007, eight test wells had been drilled and BDE had spent over $12 million dollars. However, four of the wells had not been completed as a producer or plugged and abandoned. Ultimately, the last of the eight test wells was not completed until late 2008.

[¶10] Meanwhile, in late 2007, Encana sent a letter to BDE confirming earlier discussions between the parties concerning BDE's failure to remit payments for drilling costs to Encana in a timely manner. The letter memorialized Encana's understanding that BDE had committed to bringing its account current by the end of the year. In April of 2008, Encana again contacted BDE concerning unpaid invoices which, according to Encana's accounting department, totaled over $1 million and were ninety days late. By letter dated August 28, 2008, Encana informed BDE that Encana considered BDE to be in default under the FOA by failing to remit payments to Encana for the costs Encana had incurred in acting as operator on BDE's behalf. According to Encana, BDE's failure to meet its financial obligations meant BDE's interest in the leaseholds would vest only in the test blocks in which wells had been drilled and completed. Encana asked BDE to remit payment of all amounts due by September 30, 2008, and make all future payments in a timely manner. In the event BDE's account became past due in the future, Encana stated it would offset revenues to which BDE was entitled from producing wells in the Crimson Unit against BDE's account. Encana also proposed to complete the four remaining test wells before the end of October.

[¶11] BDE did not respond to the letter and two weeks later Encana sent another letter advising that if BDE did not agree to Encana's August 28 proposal by the following day, Encana would terminate the FOA. BDE signed and returned the letter along with a check for the amount it considered due. Encana claimed the check did not cover the full amount BDE owed and, by email dated October 14, 2008, terminated the FOA effective September 30, 2008. BDE responded that the amount due Encana was significantly lower than Encana claimed, Encana's delay in completing the wells caused BDE to experience a severe cash shortage and BDE hoped to be in a position to make further payments to Encana in two weeks.

---

[4] There were four quadrants, or exploration areas, in the Crimson Unit. There were twenty-two test blocks within the Unit.

3

[¶12]   Thereafter, the parties continued to exchange correspondence concerning the amounts allegedly due and any assignments BDE may have earned.  No assignment of interest was ever made to BDE and, in May of 2011, BDE filed a complaint against Encana.  BDE alleged that it had satisfied the requirements of the FOA and earned the right to the assignment of interest in Encana's leaseholds in the entire Crimson Unit.  BDE alleged Encana had refused to execute and deliver the assignments on the grounds that BDE had failed to meet its financial obligations as required by paragraph 1E of the FOA.  BDE alleged Encana was treating the requirement in 1E as a condition precedent to its obligation to assign the interests to BDE, contrary to the terms of the agreement.  BDE claimed Encana's reason for refusing to make the assignments was pretextual and that in actuality BDE had overpaid Encana.  BDE sought rescission of the FOA and repayment of all amounts it had paid to Encana.  Alternatively, BDE sought an accounting that would allow it to determine its damages for Encana's breach of contract.  BDE also asserted claims for fraud and quantum meruit and sought damages in the amount it had paid to Encana.

[¶13]  Encana denied BDE's claims and filed a counterclaim.  Encana alleged that it had performed its obligations under the FOA in good faith and attempted to accommodate BDE's inability to meet its financial obligations to no avail.  Encana sought a judgment declaring that BDE's failure to meet its financial obligations precluded BDE from earning any assignment of interest in the Crimson Unit leaseholds.  Alternatively, Encana sought judgment declaring that even if BDE had met its financial obligations it was not entitled to assignment of any interest until "Well Payout" occurred.  Encana also sought judgment determining whether BDE retained the right to meet its financial obligations and, if so, what interest it would be entitled to if it met those obligations.  In addition to seeking declaratory judgment on those issues, Encana asserted claims against BDE for breach of contract and breach of the covenant of good faith and fair dealing and sought damages.

[¶14]  Both parties filed motions for summary judgment.  BDE sought partial judgment holding that as a matter of law Encana breached the FOA by not assigning BDE the interests to which it was entitled.  BDE argued that the FOA unambiguously required Encana to assign interests to BDE, the district court only had to determine whether the agreement was breached, and the undisputed facts showed Encana did not make the assignments. Ruling on BDE's motion, the district court concluded the FOA provided that BDE was to receive assignments even if BDE did not meet the minimum requirements.  However, the court concluded, it could not "say as a matter of law that BDE is entitled to assignments of some or all of the wells or Encana's interests" because questions of fact existed as to "which party breached the [FOA] first and whether these

4

supposed breaches were excused." On that basis, the district court denied BDE's motion.[5]

[¶15] In its summary judgment motion, Encana sought a judgment holding: 1) the phrase "completed as a producer" in the FOA meant the well casings were perforated and fracked and the wells were hooked up to the production line; 2) Encana had the right to terminate the FOA as a result of BDE's repeated failure to pay its bills; 3) the fraud claim lacked specificity, was barred by the economic loss rule, did not satisfy the elements of fraud and was not supported by clear and convincing evidence; 4) rescission was not an available remedy; and 5) BDE was not entitled to 50% of Encana's interest in the entire Crimson Unit. The district court held as a matter of law the phrase "completed as a producer" meant a well capable and ready to produce gas, including perforation and fracking, but did not require that the well be hooked up to the pipeline. The district court concluded a factual question existed as to when the wells were completed. The district court also concluded issues of fact existed as to whether BDE breached the FOA, whether Encana's delay in fracking the wells and failure to submit invoices to BDE excused any breach by BDE, when vesting occurred and whether Encana was entitled to unilaterally terminate the FOA. The district court dismissed the fraud claim, finding it unsupported by any evidence. The district court held rescission was not an available remedy as a matter of law and genuine issues of material fact existed as to whether BDE was entitled to 50% of Encana's interest in the entire Crimson Unit.

[¶16] The matter proceeded to trial before a jury in 2013. BDE attempted to show that it paid for the drilling of eight wells in the designated test blocks and spent $12 million as required by the FOA. BDE also attempted to show that although eight wells were drilled, Encana delayed completion of four of them in breach of the FOA. BDE claimed it had substantially performed its financial obligations at the time of Encana's breach. BDE sought damages in the amount it had paid to Encana for well operations less any amounts Encana had paid to BDE from well production.

[¶17] Encana attempted to prove that BDE breached the FOA by failing to timely remit payments for drilling operations. Encana also attempted to show that BDE had breached the FOA long before the delay in completing the last four wells occurred. Encana also attempted to show that it was not obligated under the terms of the FOA to complete the wells or assign interests to BDE if BDE did not meet its financial obligations; therefore, when BDE did not pay its bills, Encana was not required to continue to perform under the FOA by completing the wells or making assignments. Encana asserted that when it terminated the agreement in October 2008, BDE had not met two of the requirements under the contract—causing eight wells to be completed and meeting its financial obligations—leaving Encana with no obligation to assign any interests to BDE. Encana

---

[5] BDE has not appealed the district court's ruling on its summary judgment motion. We, therefore, do not consider whether the ruling was correct.

also attempted to prove it did not complete the last four test wells until after it terminated the FOA because of BDE's actions.

[¶18]  During the instruction conference after both parties had presented their evidence, the district court indicated it intended to give the following breach of contract instruction:

Instruction No. 24

If a party materially breaches the contract, the non-breaching party is no longer required to continue performing under the contract.

BDE objected to the instruction, arguing that a party cannot continue to accept performance by the other party after a breach and then later declare it had no obligation to perform under the contract after the breach.  BDE argued the law requires a party either to declare the breach and terminate the contract or continue to perform the contract.  In the context of this case, BDE asserted Encana could not claim BDE breached the contract at some date by failing to pay its bills, continue to accept payments from BDE after the alleged breach and later declare Encana was not required to complete the wells or assign interests on the basis of BDE's earlier breach.  The district court gave the instruction over BDE's objection.

[¶19]  The district court also gave the jury the following verdict form:

1.  Please find which party by a preponderance of the evidence breached the contract and/or the implied covenant of good faith and fair dealing?

_____ Encana                          _____ [BDE]

2.  What are the damages proven by a preponderance of the evidence by the non-breaching party?

$_____

BDE objected to the verdict form on the basis that the FOA did not make Encana's performance conditional on BDE's performance, or vice versa, and neither party had taken that position in presenting its case.  BDE argued the jury should be allowed to decide whether Encana breached the FOA and, if so, the amount of BDE's damages and to decide whether BDE breached the FOA and, if so, the amount of Encana's damages. The district court gave the verdict form quoted above over BDE's objection.

[¶20]  After deliberating, the jury returned a verdict finding that BDE breached the FOA but Encana proved no damages.  BDE filed a motion for a new trial claiming among

6

other things that the verdict form contradicted the express terms of the parties' agreement. Specifically, BDE asserted the verdict form permitted a finding, contrary to the terms of the FOA, that upon BDE's failure to meet its financial obligations, Encana was not required to assign BDE any leasehold interest. After a hearing, the district court denied the motion. BDE appealed to this Court.

## DISCUSSION

### *1. Jury Instruction*

[¶21] BDE contends the district court erred in giving Instruction No. 24 which, as set forth in paragraph 18 above, told the jury that if a party materially breached the contract, the non-breaching party was no longer required to continue performing. While conceding that this is a correct statement of the law generally, BDE argues the instruction was not appropriate under the facts of this case. BDE asserts, as it did in the district court, that a party cannot assert a breach occurred, fail to declare the breach, continue to accept performance by the other party and then refuse to perform its part of the bargain. Citing Richard A. Lord, *Williston on Contracts* § 39:32 (4th ed. 2000), BDE asserts the law applicable in the context of this case is that a victim of a breach must either declare the breach or move ahead with the contract; it cannot continue to receive benefits under the contract and then refuse to perform its part of the bargain. As applied to this case, BDE contends the jury should have been instructed that if BDE breached the FOA by failing to remit payments due, Encana either had to declare the breach and terminate the FOA at the time or continue to accept payments from BDE and perform Encana's part of the bargain by assigning the leasehold interests BDE had earned. Because Encana continued to accept payments, BDE argues, Encana was obligated to complete the wells and assign the leasehold interests.[6]

[¶22] Encana responds that Wyoming law is clear—"the party first committing a substantial breach of contract cannot complain that the other party thereafter fails to perform, and where one party to a contract repudiates it or refuses to perform, the injured party is not obligated to perform its promises." *Williams v. Collins Communications, Inc.*, 720 P.2d 880, 891 (Wyo. 1986). Applying the controlling law, Encana contends that upon BDE's failure to remit payments to Encana for costs incurred in drilling and

---

[6] Citing *PBS Enterprises, Inc. v. CWCapital Asset Management LLC*, 2008 WY 53, ¶ 9, 183 P.3d 1140, 1142 (Wyo. 2008), BDE also quotes the rule that where the parties mutually adopt a mode of performing their contract differing from its strict terms, or mutually relax its terms by adopting a loose mode of executing it, neither party can later claim a breach based upon lack of strict compliance. The difficulty with applying this rule in the present case is that there was no evidence Encana agreed to relax the terms of the FOA or to adopt a mode of performing it different from its terms. That is, there was no evidence Encana agreed to BDE failing to remit payments due. To the contrary, the evidence showed that Encana expected timely payments of all amounts due. Perhaps for that reason, the district court declined to give BDE's proposed instruction on mutual relaxation or modified performance.

7

completing the wells, BDE could not complain that Encana did not complete the wells and refused to make assignments.

[¶23] We review a district court's decision to give or refuse a particular jury instruction for an abuse of discretion. *Glenn v. Union Pacific R.R. Co.*, 2011 WY 126, ¶ 39, 262 P.3d 177, 194 (Wyo. 2011), citing *Pina v. Christensen*, 2009 WY 64, ¶ 8, 206 P.3d 1298, 1300 (Wyo. 2009).

> When examining the propriety of jury instructions, this Court reviews whether the instructions, taken as a whole, adequately and clearly advise the jury of the applicable law. The trial court is not obligated to give an instruction offered by a party as long as the jury is adequately instructed on the law as it pertains to that case. The trial court's ruling on an instruction will not constitute reversible error absent a showing of prejudice, and prejudice will not be said to result unless it is demonstrated that the instruction confused or misled the jury with respect to the proper principles of law. *Sellers v. Dooley Oil Transport*, 2001 WY 44, ¶ 9, 22 P.3d 307, 309 (Wyo.2001); *Cervelli v. Graves*, 661 P.2d 1032, 1036 (Wyo.1983). The burden is on the appellant to show prejudicial error. *Daley v. Wenzel*, 2001 WY 80, ¶ 29, 30 P.3d 547, 554-55 (Wyo.2001).

*Glenn*, ¶ 39, 262 P.3d at 194-195, quoting *Parrish v. Groathouse Constr., Inc.*, 2006 WY 33, ¶ 7, 130 P.3d 502, 505 (Wyo. 2006).

[¶24] In the present case, the issue is whether instruction No. 24 advised the jury of the applicable law. We review the legal sufficiency of jury instructions *de novo*, asking first whether an instruction is erroneous, and second whether the error prejudiced a party. *Pina*, ¶ 6, 206 P.3d at 1300. Thus, even when reviewed *de novo*, errors of substantive law contained in the language of an instruction require reversal only if the error is prejudicial. *Id.*, quoting *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 832 (Wyo. 1994).

[¶25] Initially, we note that BDE did not offer a jury instruction setting forth the principles it relied on in objecting to instruction No. 24. Instead, on the breach of contract issue, BDE offered a variety of other instructions—instructions on breach of unambiguous contracts, interpretation of ambiguous contracts, written modification of contract, oral modification of contract, mutual mistake, substantial performance, mutual relaxation of contract terms and time for performance. The relevance of some of these proposed instructions is not clear given the facts of this case. In any event, no instruction

8

was offered for the district court's consideration on the principles BDE argued in opposition to instruction No. 24.

[¶26] Moreover, under Wyoming law, "the first party committing a substantial breach of contract cannot complain that the other party thereafter fails to perform, and where one party to a contract repudiates it or refuses to perform, the injured party is not obligated to perform its promises." *Williams,* 720 P.2d at 891. *See also Winter v. Pleasant*, 2010 WY 4, ¶ 12, 222 P.3d 828, 834 (Wyo. 2010) and *Baker v. Speaks*, 2008 WY 20, ¶ 14, 177 P.3d 803, 807 (Wyo. 2010), in which the Court reiterated that the party first committing a substantial breach of contract cannot complain that the other party fails to perform. The district court's instruction in this case is consistent with Wyoming law.

[¶27] BDE contends whether or not the instruction is a correct statement of Wyoming law, it should not have been given here because it did not fit the facts of this case. In this case, BDE asserts, the parties' agreement expressly required Encana to perform by making assignments even if BDE was in breach by failing to meet its financial obligations. BDE points to paragraph 16 of the FOA, which stated in pertinent part:

> **16. Leasehold earned if less than the Minimum Requirements are met.** In the event that the Vesting Date occurs without all of the Minimum Requirements having been met, upon receipt of BDE's written request for an assignment(s), such request to be received by EnCana no later than sixty (60) days following the Vesting Date, such notice providing evidence of Vesting to Encana's satisfaction and upon receipt of evidence to EnCana's satisfaction that each Test Well has been completed as a well capable of producing oil and/or gas or P&A'd as a dry hole, and provided that BDE has complied with other applicable terms and provisions of this Agreement, Encana shall assign to BDE fifty percent (50%) of EnCana's leasehold interest in those Test Blocks in which Test Wells have been drilled (such assignment referred to herein as a "Leasehold Assignment").

[¶28] BDE asserts that when it failed to meet its financial obligations as required by paragraph 1E of the agreement, paragraph 16 took effect and Encana was required to assign to BDE fifty percent of Encana's leasehold interest in the test blocks in which test wells had been drilled. In other words, whether or not BDE had paid its bills, paragraph 16 triggered a required performance by Encana— assignment of 50% of its interest in test blocks where test wells were drilled. The effect of instruction No. 24, BDE contends, was to tell the jury that upon BDE's failure to meet its financial obligations, Encana was not required to perform by assigning the interest—a result BDE contends was contrary to the express language of the parties' agreement.

9

[¶29]   The difficulty with BDE's argument is that the issue of its entitlement to assignment of leasehold interests was left to the jury.  In ruling on BDE's motion for partial summary judgment, the district court concluded that although BDE "may" be entitled to an assignment under the FOA, the court could not "say as a matter of law that BDE is entitled to assignments" because questions of fact existed as to which party breached the FOA first and whether any such breaches were excused.  There was, therefore, no legal ruling interpreting the FOA provisions concerning BDE's right to assignments or Encana's obligation to make them.  The jury was left to interpret the provisions.  We reiterate—BDE did not appeal the summary judgment decision.

[¶30]   Although BDE argues that paragraph 16 of the FOA required Encana to make assignments even if BDE failed to meet its financial obligations as required by paragraph 1E, the jury may well have concluded otherwise. Paragraph 16 states that Encana's obligation to make the assignments depends upon evidence that "each of the test wells has been complete. . . ."  Thus, the jury may have interpreted the FOA to mean that BDE was entitled to partial assignment only if it had satisfied paragraph 1A by causing eight test wells to be drilled and completed.  Given the evidence that eight wells were not completed, the jury may have concluded BDE was not entitled to partial assignment under paragraph 16.

[¶31]   Instruction No. 24 is a correct statement of Wyoming law.  While trial courts are afforded substantial latitude to tailor the instructions to the facts of the case, *Glenn*, ¶ 41, 262 P.3d at 196, citing *Budder v. State*, 2010 WY 123, ¶ 7, 238 P.3d 575, 577 (Wyo. 2010), the facts of the present case did not support departing from the *Williams* line of cases and giving the instruction urged by BDE.  The district court did not abuse its discretion in giving instruction No. 24.

### 2. Verdict Form

[¶32]   BDE contends the district court erred in giving the jury a verdict form asking it to determine which party breached the contract and the damages proven by the non-breaching party.  BDE asserts the effect of the verdict form and instruction No. 24 was to erroneously instruct the jury that there could be only one breaching party and only one party entitled to damages.  BDE asserts the district court should have given BDE's proposed verdict form, which asked the jury to determine, first, whether Encana breached the FOA and, if so, what BDE's damages were and, second, whether BDE breached the FOA and, if so, what Encana's damages were.  BDE contends its proposed verdict is consistent with the terms of the FOA, while the district court's verdict form is contrary to those terms. Again focusing on paragraph 16, BDE argues that a breach by BDE of *any* of the minimum requirements of the FOA *triggered*, rather than *excused*, Encana's obligation to perform by assigning leasehold interests to BDE.  For the same reasons we concluded the district court did not err in giving instruction No. 24, we hold it did not err

10

in giving its proposed verdict form rather than the one BDE proposed. BDE's proposed verdict form was not consistent with the jury instructions the district court gave and BDE offered no instruction to support giving its proposed verdict form. Moreover, BDE's argument assumes its interpretation of paragraph 16 is correct as a matter of law. The district court expressly held it could not say as a matter of law that BDE was entitled to an assignment. The jury was left to interpret the contract and it apparently concluded BDE breached the FOA and Encana was not required to assign interests.

[¶33] Although we have concluded it was not error under the circumstances to give instruction No. 24 or the verdict form to the jury, we note that this was a complex case involving a highly technical and complicated agreement. Rather than obtaining legal rulings from the district court concerning the meaning of particular contract provisions and then having the court instruct the jury concerning those rulings, the jury was left to decipher important provisions of the contract. At the summary judgment stage, BDE asked the district court to rule broadly that its right to an assignment had vested as a matter of law; however, rather than relying on particular contract language, BDE argued mostly factual matters. When the verdict form was discussed, no one suggested asking the jury to determine whether specific provisions of the contract had been met. In a case this complex, it would have been helpful to have the jury decide, for example, which, if any, of the minimum requirements were met and whether BDE's interest had vested. Instead, the jury was left to sort out not only what happened between the parties but what the contract meant. The verdict form BDE offered would not have clarified the issues for the jury. Although from the record it appears this case could have been presented to the jury differently, our task is to address the issues raised. Addressing those issues, we conclude the district court did not err as a matter of law or abuse its discretion in instructing or submitting the challenged verdict form to the jury.

### 3. Exclusion of Expert Testimony and Reports

[¶34] Prior to trial, the district court excluded the testimony and report of BDE's expert witness, John Wheeler, on the ground that BDE failed to comply with the disclosure requirements stated in the scheduling order and W.R.C.P. 26(a)(2). During the trial, the district court also excluded a report, the Allen & Crouch report, on the ground that it was double hearsay. BDE contends it was error for the district court to exclude this evidence. Rulings on the admissibility of evidence are within the sound discretion of the trial court and will not be disturbed by this Court absent a clear abuse of discretion. *City of Gillette v. Hladky Constr., Inc.*, 2008 WY 134, ¶ 84, 196 P.3d 184, 211 (Wyo. 2008). We begin by addressing the district court's ruling as to Mr. Wheeler.

### a. Wheeler report and testimony.

[¶35] In its January 2012 scheduling order, the district court gave each party bearing the burden of proof on any issue until September 21, 2012, to designate any expert witnesses

the party intended to call to testify concerning the issue.  The scheduling order expressly stated that W.R.C.P. Rule 26 (a)(2) applied except as indicated.[7]  Rule 26(a)(2) provides:

> (a) Required disclosures; . . .
>> (2) Disclosure of expert testimony.
>>> (A) . . . a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Wyoming Rules of Evidence
>>> (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness or disclosure signed by counsel for the party.  The report or disclosure shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions;  any exhibits to be used as a summary of or support for the opinions;  the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years;  the compensation to be paid for the study and testimony;  and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

(Emphasis added.)

[¶36]  On September 21, 2012, BDE emailed to Encana a letter listing seven expert witnesses that BDE intended to call.  The first three witnesses were identified as follows:

> 1.  Mr. Phil Grice, Lee Keeling & Associates, Tulsa, Oklahoma (http:lkaengineers.com)
>
> Mr. Grice will testify regarding valuation of oil and gas reserves in the Crimson Unit.
>
> 2.  Mr. Gordan Romine, Lee Keeling & Associates, Tulsa, Oklahoma (http://lkaengineers.com)

---

[7] The exceptions indicated in the scheduling order are not relevant to BDE's expert.

Mr. Romine will testify regarding valuation of oil and gas reserves in the Crimson Unit.

3.    Mr. John Wheeler, Lee Keeling & Associates, Tulsa, Oklahoma http://lkaengineers.com

Mr. Wheeler will testify regarding geological analysis necessary to support an accurate valuation of oil and gas reserves in the Crimson Unit.

The letter stated that the biographical information for the witnesses could be found at the links shown after the name. No other information concerning the experts or their opinions was provided.

[¶37] On October 10, 2012, Encana filed a motion to exclude BDE's expert testimony on the grounds that the September 21 letter did not comply with the scheduling order or W.R.C.P. 26(a)(2) because it did not include the experts' reports, the expert opinions, the data the experts considered, exhibits the experts would use, a list of the experts' publications, the amount of compensation being paid to the experts, or a list of the experts' prior testimony. Encana also asserted that for some of the witnesses, the links provided did not describe their training or experience. Encana asserted it was prejudiced by the lack of disclosure because the scheduling order gave Encana only until mid-November to designate counter experts which would be difficult if not impossible given the highly technical nature of Mr. Wheeler's opinions. Encana argued the prejudice was exacerbated because Encana did timely disclose its expert's opinions in compliance with the scheduling order and rule and so BDE had the benefit of that information months in advance of trial.

[¶38] Also on October 10, 2012, BDE filed a motion asking for clarification or modification of the scheduling order along with a motion to compel Encana to produce its Crimson Unit reserve valuation. BDE asserted the scheduling order set a date for identifying experts but not for disclosing their reports and opinions; therefore, BDE assumed the report disclosure date was governed by W.R.C.P. 26(a)(2)(C), which provides that absent direction from the court, disclosures must be made ninety days before trial. BDE also claimed its failure to produce the expert reports and opinions was due at least in part to Encana's delay in producing its internal valuation of the Crimson Unit reserves which BDE's experts needed to prepare their reports. BDE asked the district court to allow it until November 1, 2012, to disclose expert reports. On November 1, 2012, before the district court heard argument on the motions, BDE provided Encana with a full disclosure for Mr. Wheeler and indicated the other two witnesses identified in paragraph 36 above would not testify.

[¶39]  The district court convened a hearing on the motions on November 15, 2012.  On December 7, 2012, it issued an order granting Encana's motion to exclude Mr. Wheeler's testimony and denying BDE's motion to modify the scheduling order.  The district court denied BDE's motion on the ground that counsel for BDE admitted at the hearing that they had misread the scheduling order which unambiguously required disclosure of reports and opinions with the expert designation and BDE failed to ask for an extension until after the deadline had expired.

[¶40]   In granting Encana's motion, the district court cited W.R.C.P. 37(c)(1), which states:

> **Rule 37. Failure to Make Disclosures or Cooperate in Discovery; Sanctions**.
> …
> (c) Failure to disclose;  ...
> (1) A party that without substantial justification fails to disclose information as required by Rule 26(a) …, is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.   In addition to requiring payment of reasonable expenses, including attorney's fees caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

[¶41]  The district court concluded there was no substantial justification for BDE's failure to disclose Mr. Wheeler's report, stating "BDE had ample opportunity to comply with the deadlines in the scheduling order and to seek the Court's assistance if needed discovery was not produced in a timely manner."  The district court further concluded BDE did not meet its burden of proving its failure to comply was harmless, stating:  "Encana has demonstrated that it would be prejudiced if the Court were to allow Mr. Wheeler's testimony, because it would be difficult or impossible to find a counter expert at this late date.  BDE offered no evidence to the contrary."

[¶42]   BDE asserts the district court erred in excluding the expert testimony and report. BDE maintains that the scheduling order required disclosure of expert witnesses in September 2012, but did not require delivery of expert reports at that time.[8]  BDE further

---

[8] As noted in paragraph 39, the district court's order states that counsel for BDE admitted at the hearing that they had misread the scheduling order which unambiguously required compliance with W.R.C.P.

contends its expert's report and opinions were dependent on Encana's reserve valuations, estimates which Encana refused to produce until BDE filed its motion to compel.

[¶43] A district court is generally afforded broad discretion, both in the mechanisms adopted to control discovery and in its selection of appropriate sanctions for violations of discovery. *Roemmich v. Roemmich*, 2010 WY 115, ¶ 22, 238 P.3d 89, 95 (Wyo. 2010), citing *Ruwart v. Wagner*, 880 P.2d 586, 592 (Wyo. 1994). A court does not abuse its discretion if it reasonably could have concluded as it did. *Id.* In the present case, the scheduling order clearly stated that W.R.C.P. 26(a)(2) applied. W.R.C.P. 26(a)(2) clearly requires disclosure of expert reports and opinions at the time experts are identified. There is no question BDE failed to comply with the order and the rule.

[¶44] Although BDE argues its failure to comply was due in part to Encana's failure to provide discovery, BDE did not file a motion to compel until the deadline for designating experts had passed. If, in fact, BDE needed documents from Encana in order for Mr. Wheeler to prepare his report, the proper course of action was to file a motion to compel, and for an extension, before the designation deadline. BDE did not request either until several weeks after the designation deadline.

[¶45] BDE provided Mr. Wheeler's report to Encana on November 1, 2012. The scheduling order gave the parties until November 16, 2012, to designate counter experts. Encana showed that fifteen days was not sufficient time for it to find a counter expert. The district court concluded BDE did not meet its burden of proving its failure to comply was harmless because it offered no evidence to refute Encana's evidence that it was prejudiced. Rule 37 expressly provides that a party who fails to disclose information required by Rule 26 "is not permitted" to use the undisclosed information at trial unless the noncompliance is substantially justified or harmless. The disclosures required by W.R.C.P. 26(a)(2) are mandatory and a court does not abuse its discretion when it excludes expert testimony as a sanction for noncompliance. *Wilson v. Tyrrell*, 2011 WY 7, ¶ 52, 246 P.3d 265, 279-80 (Wyo. 2011). The district court in the present case reasonably concluded BDE's failure to comply was not substantially justified or harmless. The district court reasonably exercised its discretion and the authority vested in it under Rule 37 when it excluded the testimony.

### b. *Allen & Crouch report.*

[¶46] Prior to trial, Encana sought a ruling excluding an exhibit listed in BDE's pretrial memorandum, claiming it was unreliable, inadmissible hearsay and not a business record. The exhibit, the Allen & Crouch report, is a reserve analysis of BDE's oil and gas

---

26(a)(2). A transcript of the hearing is not included in the record on appeal, but we presume the district court's statement is accurate. Having admitted before the district court that it misread the scheduling order which clearly required compliance with the rule, BDE's assertion on appeal that the order did not require disclosure of Mr. Wheeler's report at the time he was designated is duplicitous.

interests in three Wyoming counties, including the Crimson Unit in Sublette County. It was prepared for BDE in 2008 by an independent petroleum engineer. Mr. Allen, who prepared the report, was deceased at the time of trial. The district court reserved ruling until the report was offered into evidence at trial.

[¶47] During the trial testimony of Eric Koval, the president of BDE and witness through whom BDE sought to introduce the report, the district court heard argument outside the presence of the jury concerning the report and ruled that it was inadmissible. The district court concluded that the report, although maintained in BDE's business records, was prepared by an outsider and BDE did not have sufficient personal knowledge concerning the report and how it was generated to establish its trustworthiness. The district court also ruled that the report was essentially expert opinion and was not disclosed in accordance with the scheduling order.

[¶48] BDE claims the district court's ruling is erroneous. BDE asserts the report should have been treated as a business record despite the fact that it was prepared by a third party because it was integrated into BDE's records and BDE relied upon it.

[¶49] Encana responds that the district court properly excluded the report because it did not meet the reliability requirements to be treated as a BDE business record. Encana asserts the rule BDE relies upon applies to records regularly, systematically and repetitively created in the course of business so that their reliability and accuracy is assured. The Allen report, Encana argues, was a one-time report created by an outside party on the basis of an undisclosed methodology and no BDE employee had personal knowledge of how it was prepared or what specific data and assumptions were used. Encana further contends that even if the report can be considered a BDE business record, the report lacked the trustworthiness W.R.E. 803(6)(b) requires.

[¶50] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. W.R.E. 801(c). Hearsay is generally not admissible. W.R.E. 802. One exception to the hearsay rule is that records kept in the course of a regularly conducted business activity may be admissible "unless the source of information or the method or circumstances or preparation indicate lack of trustworthiness." W.R.E. 803(6).

[¶51] This Court has recognized that an exhibit can be admitted as a business record of an entity even when that entity was not the maker of the exhibit, provided the other requirements of Rule 803(6) are met and the circumstances indicate that the records are trustworthy. *Alloway v. RT Capital, Inc.*, 2008 WY 123, ¶ 16, 193 P.3d 713, 718 (Wyo. 2008). The party objecting to the admission of a business record has the burden of establishing that a lack of trustworthiness should keep the document out of evidence. *Mabe v. State*, 2007 WY 172, ¶ 16, 169 P.3d 870, 874 (Wyo. 2007).

[¶52] Encana argued, as it does on appeal, that the Allen report was unreliable because it did not identify the methodology Mr. Allen used or assumptions he made in estimating the value of BDE's reserves. As support for allowing the report into evidence as a business record, Mr. Koval stated that Mr. Allen was a professional engineer, had placed his professional stamp on the report, and had represented in the report that the values arrived at were derived from available data and generally accepted petroleum engineering practices. Neither Mr. Koval nor anyone else on BDE's behalf identified the methodology Mr. Allen used or assumptions he made in formulating his opinions. BDE also did not describe its relationship with Mr. Allen, indicate how or why it acquired the report, or show that it was familiar with the methods Mr. Allen used in preparing the report. Absent foundation establishing that BDE had personal knowledge of the methods Mr. Allen used in preparing the report, the district court properly exercised its discretion in excluding the report. Mr. Koval's statements, in essence asking the court to assume the methods were reliable based solely on the fact that Mr. Allen was a professional engineer, had affixed his stamp to the report and stated that he used generally accepted petroleum engineering practices, were insufficient to establish the requisite foundation.

[¶53] Additionally, it is apparent from the transcript that the district court viewed the Allen report as expert opinion which BDE had not disclosed as required by the scheduling order. The district court viewed BDE's attempt to use the Allen report through Mr. Koval as "a backdoor way" of getting expert testimony that was not properly disclosed into evidence. Although the district court ultimately excluded the report on the ground that BDE did not establish it as trustworthy under W.R.E. 803(6), the court had the discretion to exclude it based upon the untimely disclosure.

### 4.    *Exclusion of Evidence Concerning Sleeping Giant Well*

[¶54] In July of 2008, BDE pre-paid over $1 million to Encana to drill and complete a well located outside the Crimson Unit and not covered by the FOA. By late September of 2008, the well, the Sleeping Giant, had been plugged and abandoned and Encana was holding the balance of the monies BDE had paid to cover outstanding costs for plugging and abandoning the well. In October of 2008, BDE asked Encana to apply the Sleeping Giant funds to the amounts BDE owed on the Crimson Unit. Encana refused.

[¶55] At trial, BDE sought to introduce evidence that Encana was holding unused funds BDE had paid for the Sleeping Giant well that could have been applied to the amounts BDE owed on the Crimson Unit. The district court declined to allow the evidence, concluding that the Sleeping Giant was a separate transaction that did not fall under the Crimson Unit FOA and Encana's conduct with respect to the unused Sleeping Giant monies could not be the basis for claiming breach of the implied covenant of good faith arising from the FOA. The district court also declined to allow the pleadings to be amended during trial to add a claim for breach of the FOA or the implied covenant of

17

good faith based upon Encana's refusal to apply funds from the Sleeping Giant to the amounts BDE owed under the FOA.

[¶56] Wyoming law is clear that the implied covenant of good faith and fair dealing requires that parties to a contract not commit an act that would injure the rights of the other party to receive the benefit of their agreement. *Scherer Constr., LLC v. Hedquist Const.,* 2001 WY 23, ¶ 19, 18 P.3d 645, 653 (Wyo. 2001). Compliance with the obligation to perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party. *Id.* The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties. *Id.*

[¶57] In his deposition, Mr. Koval testified that the Sleeping Giant was the subject of a separate agreement between BDE and Encana and was not one of the wells covered by the Crimson Unit FOA. Mr. Koval also testified that the Crimson Unit FOA did not contain any provision requiring Encana to apply monies BDE paid on transactions separate from the FOA toward amounts owed under the FOA. Likewise, Mr. Koval testified that the Sleeping Giant agreement did not contain a requirement that Encana apply any surplus paid for that well to amounts BDE owed under the FOA.

[¶58] The Sleeping Giant transaction and the Crimson Unit FOA were entirely separate. Nothing in the FOA agreement justified an expectation by BDE that monies paid on the Sleeping Giant well would be used to cover unpaid expenses under the FOA. The covenant of good faith and fair dealing arising under the FOA could not be construed to establish a new, independent right of BDE or duty owed by Encana not agreed upon. The district court did not abuse its discretion when it denied the introduction of evidence concerning the Sleeping Giant transaction in this breach of the Crimson Unit FOA action.

## CONCLUSION

[¶59] The district court did not abuse its discretion in instructing the jury or preparing and submitting the verdict form. The district court likewise did not abuse its discretion in excluding BDE's expert witness and reports, or excluding evidence involving a separate transaction between the parties to show breach of the implied covenant of good faith and fair dealing. The judgment entered on the jury verdict is affirmed.