# THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 113

APRIL TERM, A.D. 2020

August 26, 2020

DANIEL GROSKOP, as Trustee of the
Black Diamond Liquidating Litigation
Trust,

Appellant
(Plaintiff),

v.

S&T BANK,

Appellee
(Defendant).

S&T BANK,

Appellant
(Defendant),

v.

DANIEL GROSKOP, as Trustee of the
Black Diamond Liquidating Litigation
Trust,

Appellee
(Plaintiff).

S-19-0254, S-19-0255

*Appeal from the District Court of Johnson County*
*The Honorable William J. Edelman, Judge*

*Representing Daniel Groskop:*
    Tyler T. Dugger, Tolliver Law Firm, P.C., Billings, Montana.


*Representing S&T Bank:*
    Patrick J. Murphy and Keith J. Dodson, Williams, Porter, Day & Neville, P.C., Casper, Wyoming.


*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   In 2010, Black Diamond Energy and Black Diamond Energy of Delaware (together, "the BDE Companies"), and seventeen limited partnerships (the "Limited Partnerships"), sued S&T Bank ("the Bank").  The Complaint alleged, among other things, that the Bank's lending policies in the wake of the 2008 economic recession caused severe financial loss to the Limited Partnerships managed by the BDE Companies.  Following the resolution of various procedural issues, the Bank filed its Answer to Plaintiffs' Complaint in 2012.[1]  In 2015, the Limited Partnerships formed a Liquidating Litigation Trust ("the Trust") pursuant to the partnership agreement.  The Trust appointed Daniel Groskop, a former financial manager for the BDE Companies, as Trustee.  When we refer to Mr. Groskop in this opinion, it is in his capacity as Trustee.  Mr. Groskop was substituted for the Limited Partnerships as the true party in interest in 2017, on the condition that any claims the BDE Companies had against the Bank were to be dismissed with prejudice.  The BDE Companies had no further involvement in these proceedings.

[¶2]   After Mr. Groskop's substitution and as the litigation progressed, discovery disputes arose.  The Bank filed a motion to compel production, a motion for additional sanctions, and three motions to dismiss.  The district court entered two orders compelling discovery to no avail.  Then, Mr. Groskop failed to prepare for the Rule 30(b)(6) deposition after designating himself as the 30(b)(6) deponent.  In light of Mr. Groskop's noncompliance with the district court's orders and the Wyoming Rules of Civil Procedure, the district court dismissed the case with prejudice.  Mr. Groskop timely appealed.

***ISSUE***

[¶3]   We consolidate and rephrase the parties' issues into a single issue:[2]

---

[1] The Bank timely removed the case to federal court for the District of Wyoming, which remanded the case to the Wyoming Fourth Judicial District Court later that same year.  The Bank then filed a motion to dismiss for lack of personal jurisdiction, which the district court granted in June 2011.  The BDE Companies appealed to the Wyoming Supreme Court, where this Court reversed the dismissal.  *See Black Diamond Energy Partners 2001-A Ltd. v. S & T Bank*, 2012 WY 84, ¶ 11, 278 P.3d 738, 741 (Wyo. 2012).

[2] The Bank cross-appeals the denial of two motions for summary judgment filed in July 2019.  The district court made no ruling on these outstanding motions prior to dismissing the case.  The Bank argues its motions were deemed denied and merged into the dismissal.  Those motions subject to a "deemed denied" resolution are currently addressed in W.R.C.P. 6(c)(4).  W.R.C.P. 56 motions for summary judgment are not referenced in W.R.C.P. 6(c)(4):

> **Any motion, under Rules 50(b) and (c)(2), 52(b), 59 and 60(b)**, not determined within 90 days after filing shall be deemed denied unless, within that period, the determination is continued by order of the court, which continuation may not exceed 60 days, at which time, if the motion has not been determined, it shall be deemed denied.

(Emphasis added.)  There is no final judgment on the motions for summary judgment from which the Bank

1

Did the district court abuse its discretion when it dismissed the case with prejudice?

## *FACTS*

### A.    Background

[¶4]    The BDE Companies were the general managing partners for seventeen Limited Partnerships.  Collectively, the Limited Partnerships represented approximately 3800 members (the "Limited Partners").  In 2002, the Bank began lending money to the BDE Companies through a line of credit.  The original loan agreement underwent numerous amendments, primarily increasing the line of credit and extending the maturity date of the loan.  In early 2008, the BDE Companies requested another increase to the line of credit—raising the BDE Companies' debt to nearly $30 million—and another extension of the loan due date.  The Bank agreed to the increase and extension on the condition that the BDE Companies execute control agreements with the Bank.  The BDE Companies granted the Bank a security interest in and control over all assets of the BDE Companies and the Limited Partnerships.  *Black Diamond Energy Partners 2001-A Ltd. v. S & T Bank*, 2012 WY 84, ¶ 11, 278 P.3d 738, 741 (Wyo. 2012).  The BDE Companies also agreed to retain one of three consulting companies from a list provided by the Bank to assist in a restructuring plan.

[¶5]    The BDE Companies chose Morris Anderson and Associates, and Morris Anderson provided a chief restructuring officer.  Morris Anderson worked with the BDE Companies for approximately two months.  Efforts to salvage the BDE Companies were unsuccessful, and they defaulted on their loan in 2009.

### B.    Relevant Procedural History

[¶6]    The BDE Companies and Limited Partnerships sued the Bank in August 2010, alleging that the Bank's "domination and control" of the BDE Companies caused financial loss to the Limited Partners.  They alleged that under the control agreements,  the Bank mishandled company assets.  They also claimed that Morris Anderson, as a de facto agent of the Bank, mismanaged the restructuring efforts.

[¶7]    In 2015, the Limited Partnerships created a Liquidating Litigation Trust.[3]  The Trust was to provide a vehicle for any distributions of assets owed the Limited Partners, including

---

may appeal. *See Metz v. Laramie Cty. Sch. Dist. No. 1*, 2007 WY 166, ¶¶ 57–59, 173 P.3d 334, 349 (Wyo. 2007) (Under W.R.C.P. 6, the district court retains jurisdiction to decide a summary judgment motion beyond the 90-day time frame) (construing W.R.C.P. 6(c)(2), the former provision now enumerated as W.R.C.P. 6(c)(4)).  Therefore, we will not consider the cross-appeal.

[3] The Limited Partnership agreement for each Limited Partnership provided that a "Final Terminating

2

any favorable judgment rendered in this lawsuit.[4]  Mr. Groskop, a former employee in the BDE Companies' accounting department, was named Trustee and substituted as Plaintiff in place of the Limited Partnerships.  The Limited Partnerships and Mr. Groskop certified that Mr. Groskop was able to represent the Limited Partners' interests.  The district court dismissed the BDE Companies' claims with prejudice.  Mr. Groskop filed a First Amended Complaint in May 2017, broadly incorporating the same allegations made in the original Complaint.

## C.    The Bank's January 2019 Motion to Compel

[¶8]    From the outset there were discovery disputes.  These disputes culminated in 2019 when in January, the Bank filed a motion to compel discovery.  The motion alleged that, despite numerous "meet and confer" letters to Mr. Groskop, he failed to produce crucial documents and information directly related to the allegations in the First Amended Complaint.  The Bank claimed that Mr. Groskop violated W.R.C.P. 33 and 34 and asserted privilege on nonprivileged documents.

---

Event" terminates a partnership.  The agreement defined "Final Terminating Event" as:

> [A]ny one of the following: (i) the expiration of the fixed term of the Partnership; (ii) the giving of notice to the Participants by the Managing General Partner of its election to terminate the affairs of the Partnership; (iii) the giving of notice by the Participants to the Managing General Partner of their similar election through the affirmative vote of Participants whose Agreed Subscriptions equal a majority of the Partnership Subscription.

The Limited Partnership agreement also provided:

> Upon the occurrence of a Final Terminating Event, the affairs of the Partnership shall be wound up and there shall be distributed to each of the parties its Distribution Interest in the remaining assets of the Partnership.
> . . . Any in-kind property distributions to the Participants shall be made to a liquidating trust or similar entity for the benefit of the Participants[.]

The BDE Companies issued a termination notice to the Limited Partners on May 9, 2014.  In that notice, the BDE Companies stated:

> The liquidating/litigation trust described in . . . the Partnership Agreement is hereby created and ANY in-kind property distributions to the Participants will be made to this liquidating/litigation trust for the benefit of the Participants unless such Participant makes an in-kind distribution election, as . . . described below.

[4] The Trust Agreement provided:

> This Trust is executed in order to provide for the payment of the proceeds of any judgment and/or award granted to the Limited Partnership plaintiffs in that certain Wyoming state court action styled *Black Diamond Energy Partners 2001-A Ltd., et al., v. S & T Bank*, Case No S-11-0206, for the benefit of the limited partners who are the beneficiaries of the Trust.

3

[¶9]    The Bank charged that Mr. Groskop did not comply with his W.R.C.P. 33 discovery obligations when he failed to verify two sets of interrogatories.[5] Counsel for Mr. Groskop signed the first set of interrogatories on his behalf.  The Bank complained that Mr. Groskop, not counsel, was the proper party to sign and that counsel had not signed under oath.  The Bank also maintained that it had not received a signed response to the second set of interrogatories.

[¶10]  The Bank asserted that Mr. Groskop failed to comply with his W.R.C.P. 34 discovery obligations.[6] He failed to adequately respond or object to well over one hundred requests for production which were served on him.  The unanswered requests sought documents from both the BDE Companies and the Limited Partnerships including monthly letters sent to the Limited Partnerships from the BDE Companies, the Limited Partnerships' Internal Revenue Service Schedule K-1 reports,[7] and other Limited Partnership financial data.  The Bank argued these documents were critical to its defense; were in Mr. Groskop's control; and that the failure to produce them hindered the Bank's ability to prepare its case.

[¶11]  The Bank alleged Mr. Groskop failed to produce other key documents.  Specifically, in 2011, the original plaintiffs had subpoenaed Morris Anderson seeking information and documents related to restructuring efforts.  Morris Anderson, in response to the subpoena, had provided relevant documents to original counsel for the BDE Companies and the Limited Partnerships.[8]  The Bank requested discovery of these documents from Mr. Groskop in March 2016, but, by January 2019, they had not been produced.  Mr. Groskop claimed that he had already provided these documents through an electronic database.  The Bank denied that the documents were included in that database and asserted that its efforts to obtain them by other means had been unsuccessful.  It contended that the Limited Partnerships' claim that they were damaged by the Bank's control of Morris Anderson made discovery of these documents crucial.

[¶12]  Mr. Groskop produced more than 100 banker boxes of unorganized and irrelevant documents forcing the Bank to look for the proverbial "needle in a haystack."  In addition, he produced a large, unorganized online database forcing the Bank to sort through a copious amount of electronic information without guidance.  The Bank asserted Mr. Groskop's failure to provide documents as they were kept in the usual course of business violated W.R.C.P. 34.[9]

---

[5] Under W.R.C.P. 33(b)(1), interrogatories must be answered by the party to whom they are directed.  Under 33(b)(3), each interrogatory must be answered in writing under oath.

[6] W.R.C.P. 34 governs the production of documents, including the time limit for responses and objections.

[7] Shareholders' proportionate share of income is reported on Internal Revenue Service Schedule K-1. *Simmons v. Simmons*, 706 S.E.2d 456, 458 (Ga. 2011).

[8] The BDE Companies and the Limited Partnerships were originally represented by the same law firm which they eventually terminated.  They hired current counsel prior to Mr. Groskop's substitution.

[9] W.R.C.P. 34(b)(2)(E)(i) requires that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."

[¶13] Finally, the Bank took issue with Mr. Groskop's privilege log. It argued numerous documents listed as privileged were discoverable. It requested the production of these documents or, in the alternative, that the court conduct an *in camera* review to determine which documents should be produced.

## D. The District Court's March 2019 Order Compelling Discovery

[¶14] At the March 13, 2019 hearing, the district court orally granted the Bank's motion to compel and ordered Mr. Groskop to comply by April 1, 2019. The district court memorialized this ruling in an Order Compelling Discovery dated March 28, 2019. It directed Mr. Groskop to personally provide verified answers to the Bank's first and second sets of interrogatories. It required Mr. Groskop to respond to the Bank's requests for production and to submit documents listed in his privilege log for an *in camera* review. On June 3, 2019, it entered an Order Awarding Attorneys' Fees and Costs to the Bank to be paid by Mr. Groskop within thirty days.

## E. The Bank's Motion for Additional Sanctions

[¶15] Mr. Groskop filed supplemental responses to discovery by the April 1 cutoff. The Bank filed a Motion for Additional Sanctions on April 18, 2019. It argued that Mr. Groskop did not adhere to the court's order and that Mr. Groskop had control "over significantly more documents than what he ha[d] produced."[10] In essence, he had simply "doubled down on [his] previous position that he ha[d] already complied with his discovery obligations." Mr. Groskop again failed to produce any documents related to the BDE Companies or Limited Partnerships, particularly financial statements and internal communications documenting the collapse of the BDE Companies. Mr. Groskop refused to produce the Morris Anderson documents and raised a new argument—he was not required to produce them because he had not been substituted as the true party in interest at the time the Morris Anderson subpoena was issued. The Bank insisted that dismissal of the case was the only appropriate remedy given Mr. Groskop's deficient response and a fast-approaching mid-September trial date.

## F. The District Court's Order on Defendant's Motion for Additional Sanctions

[¶16] The district court granted the Bank's motion for additional sanctions. It found that despite having "ample time and opportunity to respond to several discovery requests," Mr. Groskop did not do so even after the court entered its Order Compelling Discovery. It found that Mr. Groskop failed to adequately respond to requests seeking documents related to payments to the Limited Partners and minutes and memorandums regarding loans and additional loans. Against Mr. Groskop's assertions, the district court found he had access

---

[10] The Bank based this argument on documents referenced but not produced in the electronic database.

5

to "all information, documents, and other relevant evidence provided to his predecessor in interest, the Limited Partners." When Mr. Groskop was substituted as the true party in interest, he "stepped [into] the shoes of the Limited Partners that were the original Plaintiffs[] in this matter." It found Mr. Groskop's argument that he was not required to provide the Morris Anderson subpoena responses because he did not personally issue the subpoena "an absolutely preposterous proposition." The district court reasoned that "all documents and/or information provided to the Limited Partners as a result of their subpoenas is unequivocally considered to have been provided to [Mr.] Groskop as well." Regarding information related to the BDE Companies, the district court found "Plaintiff has the practical ability to obtain such information/documents from [the BDE Companies] based on Plaintiff's relationship with [the BDE Companies]."

[¶17] The court again ordered Mr. Groskop to comply with all outstanding discovery requests and orders.[11] It warned him that failure to "obey the [c]ourt's orders as directed . . . will unquestionably result in further sanctions, which may include the dismissal of separate causes of action, the dismissal of this case in its entirety, and/or adverse jury instructions." The court directed the Bank to submit another affidavit of attorneys' fees and costs, which it awarded in a separate order dated June 27, 2019.

[¶18] After conducting an *in camera* review of Mr. Groskop's privilege log, the district court issued a subsequent order. It found the privilege log contained blanket claims of privilege, but "the vast majority of the documents [were] nowhere near the realm of protection" asserted by Mr. Groskop. The court ordered Mr. Groskop to provide the Bank with the discoverable materials.

## G.     The Final Straw—Mr. Groskop's Rule 30(b)(6) Deposition

[¶19] After the Bank filed for additional sanctions, it deposed Mr. Groskop in his capacity as the designated W.R.C.P. 30(b)(6) witness. Mr. Groskop had done nothing to prepare. At the deposition, he admitted he had not read the Complaint or First Amended Complaint; did not know the measure of damages sought by the Limited Partners or how damages would be proved; had not reviewed any of the deposition topics; had verified the second set of interrogatories under oath without reading them or discussing the answers with his attorneys; did not know what was required of him as the Trustee; and did not know whether he was suing the Bank on behalf of the General Partners, the Limited Partnerships, or the Limited Partners.

---

[11] The district court ordered Mr. Groskop to "produce documents . . . received by/provided to the Limited Partners, Partners, and/or Plaintiff regarding the oil and gas market in Wyoming" and documents "related to any and all litigations [the BDE Companies have] been involved with" in this region. It ordered production of all other documents related to the BDE companies "that [Mr. Groskop] has access to, including electronically stored documents outside of the . . . database" compiled by original counsel. Finally, it ordered Mr. Groskop to produce any and all electronic records that the Bank did not have an ability to access during the February 2018 document inspection.

## H.     The Bank's Second and Third Motions to Dismiss

[¶20]  After Mr. Groskop's 30(b)(6) deposition, the Bank filed a Second Motion to Dismiss Plaintiff's First Amended Complaint Due to Plaintiff's Failure to Prepare for His Rule 30(b)(6) Deposition and Other Discovery Violations in June 2019.[12]  The Bank filed a Third Motion to Dismiss in July 2019.  The Bank's motions asserted Mr. Groskop's conduct "evidences a willful and egregious disregard for his duties and obligations under the Wyoming Rules of Civil Procedure regarding discovery and merits a dismissal of the instant case."  It maintained that Mr. Groskop's failure to prepare for the 30(b)(6) deposition caused it severe prejudice.  The Bank argued—based on Mr. Groskop's admission at the 30(b)(6) deposition that he had not read the interrogatories—that he had "falsely attested to the truth of the answers in [his] discovery responses," in derogation of the court's March 2019 Order Compelling Discovery.  The Bank asserted Mr. Groskop continued to disregard the court's orders directing him to pay attorneys' fees.  It alleged dismissal was an appropriate sanction based on Mr. Groskop's inadequate supplemental responses; his ongoing failure to provide documents from Morris Anderson; his refusal to produce communications to the Limited Partners; and his failure to furnish other essential documents.[13]

[¶21]  In his response to the Third Motion to Dismiss, Mr. Groskop admitted that "failures occurred" during discovery.  He characterized each shortcoming as an "honest mistake." He complained the Bank "has not fairly represented . . . the facts" related to the discovery disputes and that it had contrived its motion to dismiss "based on partial truths" and "[w]illful [u]ntruths."  He described the Bank's argument related to signing the interrogatories as a "[d]iscovery [t]rap" and insisted "the [c]ourt's order was followed[.]" He claimed the "Bank had access to . . . voluminous documents" and "not a single aspect of this discovery dispute focuses on . . . documents which support [Mr. Groskop's] claims against the [B]ank."  Mr. Groskop raised yet another new argument on the Morris Anderson subpoena.  He claimed responsive documents had never been produced to the BDE Companies or Limited Partnerships due to actions by the Bank, and that the documents simply did not exist.  Although he acknowledged that "under Wyoming's version of 30(b)(6)" he designated himself as the proper deponent, he claimed:

---

[12] The Bank's two motions for summary judgment were filed concurrently with its second motion to dismiss.

[13] After the court granted the Bank's motion for additional sanctions, it extended the deadline for Mr. Groskop to comply with discovery to July 1, 2019.  On June 28, Mr. Groskop produced a USB drive containing communications between the BDE Companies and the Limited Partnerships.  These documents were produced after the Bank filed its second motion to dismiss but before it filed its third motion to dismiss. Notwithstanding production of the USB drive, the Bank alleged Mr. Groskop's July 1, 2019 supplemental responses failed to supply other categories of documents the district court ordered produced—such as accounting records, financial updates sent to the Limited Partners, and minutes and memorandums from Limited Partnerships' meetings related to additional loans. *See infra* at n.11.

The actual knowledge of the facts rests with the lawyers representing the Trust who have studied hundreds of documents and interviewed and deposed witnesses.

.   .   .

No ethical lawyer would attempt to impart his knowledge of facts to a witness, even a 30(b)(6) fact witness. Only the lawyers for the Trust could provide the information sought by the 30(b)(6) notice. They could not under ethical rules, teach this information to the Trustee to provide it during his deposition.

## I.    The District Court's Order of Dismissal

[¶22]   After a hearing, the district court entered an Order Granting Defendant's Second Motion to Dismiss Plaintiff's First Amended Complaint Due to Plaintiff's Failure to Prepare for His Rule 30(b)(6) Deposition and Other Discovery Violations ("Order of Dismissal") on August 27, 2019. It determined Mr. Groskop had violated two prior orders compelling discovery and production of documents and had not paid the Bank's attorneys' fees as ordered.

[¶23]   The district court determined that Mr. Groskop's failure to prepare for his 30(b)(6) deposition was a "direct" and "willful" violation of the Wyoming Rules of Civil Procedure that amounted to a failure to appear. The court found that Mr. Groskop "was obligated to respond to [the interrogatory responses] *under oath*, and to sign something under oath that one has not read is akin to lying under oath." The court found that Mr. Groskop failed to produce documents as ordered. It concluded his excuses were pretexts and contrary to the rules of civil procedure and the law.

[¶24]   The district court declared it had given Mr. Groskop ample warning that continued noncompliance with its orders "undoubtedly" would result in additional sanctions, including the possibility of dismissal. The court characterized Mr. Groskop's behavior as demonstrating a "pattern of deceit and blatant disregard" for the Wyoming Rules of Civil Procedure and "an astonishing indifference to the [c]ourt's orders" reaching a "level of hubris rarely displayed in open court." Given the significant prejudice to the Bank, willful noncompliance, and the imminent trial date, the district court concluded that dismissal of the case was the only appropriate remedy.

## *DISCUSSION*

***Did the district court abuse its discretion when it dismissed the case with prejudice?***

## A. Standard of Review

[¶25] We review a district court's rulings on discovery, including the issuance of sanctions, for an abuse of discretion. *Herrick v. Jackson Hole Airport Bd.*, 2019 WY 118, ¶ 11, 452 P.3d 1276, 1280 (Wyo. 2019). "A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances." *McBride-Kramer v. Kramer*, 2019 WY 10, ¶ 11, 433 P.3d 529, 532 (Wyo. 2019) (quoting *Three Way, Inc. v. Burton Enters., Inc.*, 2008 WY 18, ¶ 16, 177 P.3d 219, 225 (Wyo. 2008)). The appellant carries the burden of proof to demonstrate an abuse of discretion, and the ultimate issue is whether the court could have reasonably concluded as it did. *Id.*

[¶26] "A district court is generally afforded broad discretion, both in the mechanisms adopted to control discovery and in its selection of appropriate sanctions for violations of discovery." *Black Diamond Energy, Inc. v. Encana Oil & Gas (USA) Inc.*, 2014 WY 64, ¶ 43, 326 P.3d 904, 915 (Wyo. 2014) (citing *Roemmich v. Roemmich*, 2010 WY 115, ¶ 22, 238 P.3d 89, 95 (Wyo. 2010)); *see also Windham v. Windham*, 2015 WY 61, ¶ 16, 348 P.3d 836, 841 (Wyo. 2015). When a district court imposes sanctions following discovery violations, "[w]e apply a *de novo* standard of review to the question whether the district court correctly interpreted W.R.C.P. 37." *Windham*, ¶ 12, 348 P.3d at 840 (citing *Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 17, 331 P.3d 1174, 1178 (Wyo. 2014)). We review a district court's factual determinations for clear error. *Davis v. Harmony Dev., LLC*, 2020 WY 39, ¶ 18, 460 P.3d 230, 237 (Wyo. 2020); *Sharpe v. Timchula, Tr. of the Judith Timchula Living Tr. dated Oct. 19, 2000*, 2019 WY 121, ¶ 19, 453 P.3d 761, 766 (Wyo. 2019).

## B. Analysis

[¶27] Mr. Groskop claims the district court erred in granting the Bank's motion to dismiss. First, he claims he "arguably" did not violate the district court's discovery orders. Second, he claims a dismissal with prejudice is unwarranted because he did not act willfully; his alleged discovery violations were not extreme; and every violation remained curable. We reject Mr. Groskop's arguments.

### 1. Mr. Groskop violated the district court's orders and the Wyoming Rules of Civil Procedure.

[¶28] In its Order of Dismissal,[14] the district court found that Mr. Groskop violated its previous orders when he (1) failed to properly verify interrogatories; (2) failed to produce

---

[14] While the title of the district court's order granted the Bank's second motion to dismiss, the Order of Dismissal clearly determined the claims raised in the Bank's third motion to dismiss as well. (*See* the

9

responsive documents; and (3) did not pay attorneys' fees. It determined Mr. Groskop violated W.R.C.P. 30(b)(6) when he did not prepare for his deposition. The record supports these findings.[15]

### a. W.R.C.P. 33

[¶29] The district court did not err in finding Mr. Groskop had failed to properly verify the Bank's interrogatories in contravention of its March 2019 Order Compelling Discovery.[16] Wyoming Rule of Civil Procedure 33(b) states:

> (1) *Responding Party.* — The interrogatories must be answered:
>
> (A) by the party to whom they are directed; or
> (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by

Bank's third motion to dismiss discussing W.R.C.P. 34 violations.) On review, we look to the content of an order rather than the title. To do otherwise "would elevate the form of the order over its substance." *Lower v. Peabody Powder River Servs., LLC*, 2020 WY 33, ¶ 13, 459 P.3d 443, 447 (Wyo. 2020) (citing *Painter v. McGill ex rel. Wyoming Bd. of Med.*, 2019 WY 108, ¶ 13, 450 P.3d 1243, 1246 (Wyo. 2019) (rejecting argument that district court's written order was "final" for purposes of appeal because it included the words "final order")). "Instead of emphasizing the name given to an action below, we . . . concentrate on the effect the order has on the parties' rights." *Id.* (citation omitted). The district court's Order of Dismissal encompassed both the Bank's second and third motions to dismiss.

[15] Mr. Groskop does not contest he failed to pay attorneys' fees as ordered. Although both parties devote portions of their briefs to Mr. Groskop's initial failure to properly identify privileged information, these documents were produced. The district court did not base its dismissal on the privilege log.

[16] While neither party raises the question on appeal, we note under W.R.C.P. 33(b)(1)(B), interrogatories directed to a corporation or partnership may be answered by any officer or agent who shall furnish such information as is available to the party. In other words, a corporate representative must have a basis for signing and stating that the responses are accurate. *See In re Folding Carton Antitrust Litig.*, 76 F.R.D. 417, 419 (N.D. Ill. 1977) (stating the rules require a corporation's agent to acquire from various sources information necessary to answer and sign the interrogatories on the corporation's behalf). "If the corporation designates someone to answer interrogatories for it, that person is its agent for that purpose, and the answers he or she gives are clearly usable against the corporation as representative admissions." 8B Charles A. Wright et al., *Federal Practice and Procedure* § 2172, at 57 (3d ed. 2010); *see also Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 831 (E.D. Va. 2017) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 508 (4th Cir. 1977)); *United States v. 42 Jars, More or Less, Bee Royale Capsules*, 264 F.2d 666, 670 (3d Cir. 1959); *Fernandes v. United Fruit Co.*, 50 F.R.D. 82, 85–86 (D. Md. 1970). When an attorney signs for a corporate client, the attorney must make an oath that, to the best of his or her knowledge, information, and belief, the answers are true and complete. *Fernandes*, 50 F.R.D. at 85–86; *Shire Labs., Inc. v. Barr Labs., Inc.*, 236 F.R.D. 225, 227 (S.D.N.Y. 2006) (answer of corporate party may be signed by in-house or outside counsel); 8B Wright et al., *supra* at 55–57 ("Under Rule 33(b)(1)(B), a public or private corporation or a partnership or association or governmental agency may answer by any officer or agent, who shall furnish such information as is available to the party. Because the rule authorizes either an officer or an agent to answer, it clearly allows answers by an attorney.").

any officer or agent, who must furnish the information available to the party.

.   .   .

(3)  *Answering Each Interrogatory.* — Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

.   .   .

(5)  *Signature.* — The person who makes the answers must sign them, and the attorney who objects must sign any objections.

W.R.C.P. 33(b)(1), (3), (5).

[¶30]  A "[v]erification" is "a declaration that a statement is true made by a person upon oath or affirmation." Wyo. Stat. Ann. § 34-26-101(b)(v) (LexisNexis 2019). Requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses. *See Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008), *aff'd*, 254 F.R.D. 470 (M.D. Fla. 2008).[17]

[¶31]  Mr. Groskop's signed "Verification" stated:

Dan Groskop, being first duly sworn upon oath, deposes and states as follows:

I am the Plaintiff in the above-entitled action and have read these discovery requests and the answers are true to the best of my knowledge, information and belief, as far as such discovery requests are directed to my own personal knowledge.

---

[17] *See also Richard v. Dignean*, 332 F.R.D. 450, 457 (W.D.N.Y. 2019) ("The oath requirement applicable to interrogatories has legal significance. Courts have routinely refused to consider interrogatories that do not comport with that mandate." (quoting *Steptoe v. City of Syracuse*, No. 5:09-CV-1132 (NPM/DEP), 2011 WL 6012941, at *5 (N.D.N.Y. Nov. 1, 2011))); *see generally* 3 Lewis J. Liman & Lisa Vicens, *Business and Commercial Litigation in Federal Courts* § 27:20 (Robert L. Haig, ed., 4th ed.), Westlaw (database updated November 2019) ("At a minimum, the verification must contain statements that . . . [i]ndicate that the signer has read the answers to the interrogatories and that the verifier has a basis for affirming that the answers are true."); *Shulin v. Werner Enterprises, Inc.*, No. 1:15CV87, 2017 WL 10379225, at *5 (N.D. W. Va. Aug. 11, 2017) ("The person verifying the interrogatories must ensure that enough due diligence and investigation have been conducted to be sure that the party's answers are complete and the information is reliable and accurate." (citation omitted)).

Mr. Groskop swore under oath that he had read the interrogatories. He later admitted that he had not read them. Consequently, he could not know whether the answers were true or not.[18]

> By signing, an attorney or party certifies the response [is true] to the best of the person's knowledge, information, and belief formed after a reasonable inquiry. Even pro se parties are required to comply with the rule providing for verification of interrogatory responses. The verification requirement serves the critical purpose of ensuring that the responding party attests to the truth of the responses.

23 Am. Jur. 2d *Depositions and Discovery* § 129, at 473 (2013); *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010) ("Requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses."). Mr. Groskop submitted a false statement under oath. The district court did not err in finding that Mr. Groskop's false oath violated its March 2019 Order Compelling Discovery.

### b. W.R.C.P. 34

[¶32] The district court did not err when it found Mr. Groskop failed to comply with its previous orders requiring him to respond to requests for production. In the Order on Motion for Additional Sanctions, the district court ordered Mr. Groskop to produce the Morris Anderson subpoena responses,[19] any documents related to any loans or additional loans, and other requested financial documents.

---

[18] We point out that W.R.C.P. 33 requires the party to whom interrogatories are directed to answer them, and we caution attorneys and litigants to be mindful of the requirements of the rule. We find Mr. Groskop's failure to read the single sentence before his signature on the interrogatories stunning. We note that in addition to other possible consequences, those who sign documents without reading are bound by their signature and "do so at their peril." *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶ 50, 319 P.3d 116, 128 (Wyo. 2014); *Mendoza v. Gonzales*, 2009 WY 50, ¶ 10, 204 P.3d 995, 999 (Wyo. 2009) (beneficiaries who did not read disclaimer of interest in estate property are bound by it); *Schmidt v. Killmer*, 2009 WY 23, ¶ 16, 201 P.3d 1121, 1126 (Wyo. 2009) (partners who did not read dissolution agreement are bound by it); *Laird v. Laird*, 597 P.2d 463, 467 (Wyo. 1979) (husband who failed to read prenuptial agreement is bound by it). We have found one case that supports there is a proper verification of interrogatories when a party does not read the interrogatories but attests to their truthfulness. In *Shire Labs.*, 236 F.R.D. at 227–28, the court held that even though in-house counsel did not read the interrogatories before signing them, **discussion of the content of the interrogatory responses with outside counsel provided sufficient basis for the verification**. Here, Mr. Groskop not only failed to read the interrogatories, the record indicates he did not have any substantive discussion of their contents with counsel.

[19] We recognize Rule 34 "is not a device by which a party seeks to discover what *may* exist, but rather is a device to compel the production of documents that *do* exist." *Griffin Indus., Inc. v. Rest. Techs., Inc.*, No.

[¶33] Mr. Groskop contends that he "arguably" complied with the court's orders for production. In his brief on appeal, he claims his failure to produce "a certain category of documents" was due to a clerical error. According to Mr. Groskop, this "category of documents" had been misfiled. He claims he produced them immediately upon finding them. His brief does not state when these documents were produced, nor does he cite to the record. Some clarity is provided in the Bank's response brief. Apparently, Mr. Groskop's counsel provided over 1000 pages on a USB file on June 28, 2019. In a contemporaneous letter to the district court and the Bank's counsel, Mr. Groskop admitted he had received these documents in 2016. The files contained communications between the BDE Companies and the Limited Partnerships regarding the economic challenges the companies faced at the time of their collapse. Mr. Groskop submits this production shows he did not completely ignore the district court's orders, although he concedes the late production of these documents "might have created damage that could not be totally cured."

[¶34] Mr. Groskop's late production of some documents does not alter his failure to comply with the district court's orders. Significantly, Mr. Groskop does not claim he produced the financial documents referenced in the Order of Dismissal. The district court's Order of Dismissal stated:

> [T]o date [Mr. Groskop has] not produced any [financial] documents, including but not limited to, the [K-1] schedules for the [Limited Partnerships] or any loss/profit statements. . . . [Mr. Groskop's] failure to produce any financial records or documents means [he] has failed to identify any evidence in support of the alleged damages with any particularity. This will severely prejudice [the Bank's] ability to defend the case on its [merits].

---

3:06CV-444-R, 2008 WL 11357862, at *7 (W.D. Ky. Dec. 18, 2008); *In re Hunter Outdoor Prods., Inc.*, 21 B.R. 188, 192 (Bankr. D. Mass. 1982) ("The purpose of Rule 34 is not to discover what exists, but to force the production of items that do exist. An order to produce may not be made until the existence of the documents is established." (citation omitted)). A party that seeks to force the disclosure of documents has the initial burden to establish that the opposing party from whom such documents are requested actually has possession, custody or control of them. *Norman v. Young*, 422 F.2d 470, 472–73 (10th Cir. 1970). This burden initially may be met by the moving party by showing that the documents requested are of a nature that normally would be generated or kept in the ordinary course of the responding party's business. *Id.* at 473. If the moving party makes such a prima facie showing, then a rebuttable presumption arises that the documents do exist. *Id.* This presumption, however, may be overcome by the responding party if it provides a sworn statement that no such documents exist. *Id.* at 472–73; *see also MGP Ingredients, Inc. v. Mars, Inc.*, No. CIVA06-2318JWL-DJW, 2007 WL 3353401, at *3 (D. Kan. Nov. 10, 2007) (citing *Norman*, 422 F.2d at 472–73). No sworn statement negating Mr. Groskop's possession of the Morris Anderson documents is contained in the record.

Mr. Groskop's late production of some documents was too little, too late. *See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("Under the deterrence principle of National Hockey [*Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)], plaintiff's . . . belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall.").

[¶35] The Bank submitted evidence that the yet unproduced documents were in the possession or control of Mr. Groskop. The district court found Mr. Groskop was able to produce them. He did not. The record contains adequate, substantial, and credible evidence to sustain the trial court's factual findings, and we will not disturb them. *See Ohio Cas. Ins. Co. v. W.N. McMurry Const. Co.*, 2010 WY 57, ¶ 14, 230 P.3d 312, 320 (Wyo. 2010). The district court did not err. Mr. Groskop willfully withheld documents despite two orders compelling production.

### c. W.R.C.P. 30(b)(6)

[¶36] Mr. Groskop does not contest that he violated Rule 30(b)(6). Instead, he claims his conduct was not willful and therefore dismissal with prejudice was not justified. Rule 30(b)(6) provides:

> *Notice or Subpoena Directed to an Organization.* — In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. ***The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf***; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. ***The persons designated must testify about information known or reasonably available to the organization.*** This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

W.R.C.P. 30(b)(6) (emphasis added).

[¶37] "Rule 30(b)(6) allows a party to depose a corporation through representatives designated by the corporation; the designee's testimony is then generally admissible as a statement of the corporation." *Banks v. Office of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 372 (D.D.C. 2007).

14

A primary purpose[] of the Rule 30(b)(6) deposition is to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts that are clearly known to the organization and thereby to it." Fed.R.Civ.P. 30(b)(6) advisory committee notes. Once a requesting party describes with reasonable particularity the matters on which examination is requested, a series of duties fall on the responding corporation. First, the responding party must designate a deponent knowledgeable on the topic. Second, the responding party must designate multiple deponents if more than one is necessary to respond to all designated topics. Finally, the responding corporation must prepare the deponent so that he or she can testify on matters both within his or her personal knowledge as well as those "reasonably known by the responding entity."

*Id.* at 372-73 (internal citations omitted).

[¶38] The language of the rule is not permissive, and states that a designated representative *must* testify about information known or reasonably available *to the organization*. W.R.C.P. 30(b)(6). It is well-established that the "*duty* to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (emphasis added) (citation omitted). After the party seeking to depose the organization presents the topics of the proposed deposition, the organization must present someone familiar with that subject. *Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1121 (D.N.M. 2019).

[¶39] Mr. Groskop failed to prepare for the Rule 30(b)(6) deposition after designating himself as the 30(b)(6) deponent. *See supra* ¶ 19. "Producing an unprepared witness is tantamount to a failure to appear" at a deposition. *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996). Mr. Groskop's lack of preparation prevented the Bank from inquiring about basic information, including the amount, type, and basis for the Limited Partners' alleged damages. The district court found Mr. Groskop was "utterly and completely unprepared" and the deposition transcript confirms this finding. *See supra* ¶ 19.

[¶40] The district court did not err when it found Mr. Groskop had failed to comply with Rule 30(b)(6). *Taylor*, 166 F.R.D. at 363.

2. **The district court did not abuse its discretion by dismissing the case with prejudice.**

[¶41] We turn next to the question of whether the district court abused its discretion by dismissing the case under W.R.C.P. 37. Here, the record shows that Mr. Groskop violated two district court orders compelling discovery—the March 28, 2019 *Order Compelling Discovery* and the June 13, 2019 *Order on Defendant's Motion for Additional Sanctions*—and the two orders awarding attorneys' fees. It is uncontested that Mr. Groskop designated himself as the Rule 30(b)(6) deponent and failed to prepare for the deposition. *See supra* ¶ 19.

[¶42] A district court is afforded wide latitude in interpreting Rule 37 and may tailor sanctions to the seriousness of the violation. *Encana*, ¶ 43, 326 P.3d at 915 (citing *Roemmich*, ¶ 22, 238 P.3d at 95). W.R.C.P. 37(b), in relevant part, states a district court may impose sanctions for failure to obey a discovery order by:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> *(v) dismissing the action or proceeding in whole or in part;*
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

W.R.C.P. 37(b)(2)(A)(i)–(vii) (emphasis added). This Court has held that dismissal is warranted for egregious discovery violations. "The failure to comply with a discovery order is to be deplored." *Lindsey v. State*, 725 P.2d 649, 655 (Wyo. 1986). "A history of discovery violations makes that failure even more reprehensible." *State v. Naple*, 2006 WY 125, ¶ 29, 143 P.3d 358, 367 (Wyo. 2006).

[¶43] In *White*, we explained:

If a party fails to comply with a court's discovery order, the court has broad discretion to issue further orders and to impose such sanctions "as are just." W.R.C.P. 37(b)(2) [2008]. Among the sanctions specifically mentioned in the rule is "dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." W.R.C.P. 37(b)(2)(C) [2008]. "Rule 37 clearly authorizes the court to dismiss pleadings as well as grant default judgment against the disobedient party." *Global Shipping* [*& Trading, Ltd. v. Verkhnesaldincky Metallurgic Co.*], 892 P.2d [143,] 146 [(Wyo. 1995)].

*White v. State ex rel. Wyoming Dep't of Transp.*, 2009 WY 90, ¶ 12, 210 P.3d 1096, 1099 (Wyo. 2009). In *White*, the court entered an order compelling the plaintiffs to comply with discovery and pay sanctions after multiple discovery violations. *Id.* ¶ 8, 210 P.3d at 1098. It warned them that failure to follow its orders would result in dismissal. *Id.* ¶ 8, 210 P.3d at 1099. The plaintiffs failed to respond to discovery requests or pay attorneys' fees as ordered. *Id.* ¶ 9, 210 P.3d at 1099. On appeal, this Court affirmed, emphasizing that dismissal is appropriate when a party fails to "comply with appropriate court orders." *Id.* ¶ 15, 210 P.3d at 1100.

[¶44] W.R.C.P. 37(d) provides for the issuance of sanctions when a party commits other discovery violations:

> The court where the action is pending may, on motion, order sanctions if:
>
> > (i) a party or a party's officer, director, or managing agent — or a person designated under Rule 30(b)(6) or 31(a)(4) — fails, after being served with proper notice, to appear for that person's deposition; or
> >
> > (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.
>
> . . .
>
> (3) *Types of Sanctions.* — Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi). . . .

17

W.R.C.P. 37(d)(1)(A)(i)–(ii), 37(d)(3). "Unlike the sanctions available under Rule 37(b), Rule 37(d) sanctions do not require a prior court order compelling discovery and a subsequent violation of that order." 7 Robert A. Matthew, Jr., *Annotated Patent Digest* § 41:210, Westlaw (database updated August 2020). For example, dismissal or other sanctions are authorized when a party fails to appear for a deposition—including a 30(b)(6) deposition—serve answers to interrogatories, or respond to a request for inspection. W.R.C.P. 37(d); *Booth v. W. Reserve Life Ins. Co.*, 447 P.2d 500, 500 (Wyo. 1968) (noting that 37(d) provides for dismissal or other sanctions if a party willfully fails to appear for a deposition).

[¶45] Contrary to Mr. Groskop's contention, the district court provided a thorough analysis supporting its decision to use the sanction of dismissal.[20] First, the district court considered prejudice to the Bank caused by Mr. Groskop's refusal to turn over documents, properly verify interrogatories, and prepare for the Rule 30(b)(6) deposition. It found the Bank was severely disadvantaged and noted that Mr. Groskop had interfered with the judicial process by delaying discovery for years. *Farrell v. Hursh Agency, Inc.*, 713 P.2d 1174, 1180 (Wyo. 1986) (finding entry of default appropriate sanction when plaintiffs refused to comply with a court order compelling production for over a year). Next, the district court considered Mr. Groskop's culpability and found his noncompliance was

---

[20] Mr. Groskop urges this Court to adopt the five-part test described by *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992), or, in the alternative, the four-part test espoused by the Tenth Circuit in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). We note that we referenced the test set forth in *Woodworker's Supply* in *In re Paternity of HLG*:

> [T]he Tenth Circuit stated that district courts have broad discretion in determining whether discovery violations are substantially justified or harmless under the comparable federal rule of civil procedure. It listed the following factors to guide the district court's discretion: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."

*In re Paternity of HLG*, 2016 WY 35, ¶ 28, 368 P.3d 902, 909 (Wyo. 2016) (quoting *Woodworker's Supply*, 170 F.3d at 993).

> In *Ehrenhaus*, the Tenth Circuit stated:
> Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Meade [v. Grubbs]*, 841 F.2d [1512,] 152[0] n.7 [(10th Cir. 1988)] (citations omitted).

*Ehrenhaus*, 965 F.2d at 920–21 (some citations and internal quotation marks omitted). We decline to adopt either test here because neither is necessary to our holding.

18

willful. *Waldrop v. Weaver*, 702 P.2d 1291, 1293 (Wyo. 1985) ("As a general rule, willful noncompliance must be shown before the case will be dismissed." (citing *Oaks v. Rojcewicz*, 409 P.2d 839, 844 (Alaska 1966))). Mr. Groskop argues that his shortcomings were not willful because he lacked experience in legal matters. However, he was not left to wend his way through a multimillion-dollar lawsuit without guidance—he was represented by counsel. *Orosco v. Schabron*, 9 P.3d 264, 268 (Wyo. 2000) ("[T]he attorney was responsible for the circumstances that resulted in the Order of Dismissal with Prejudice, but we also have ruled that parties are bound by the conduct of their agents under such circumstances.").

[¶46] Finally, the district court considered Mr. Groskop's many foregone opportunities to comply with discovery. *See White*, ¶ 14, 210 P.3d at 1100; *Glob. Shipping & Trading, Ltd. v. Verkhnesaldincky Metallurgic Co.*, 892 P.2d 143, 146 (Wyo. 1995) (stating that whether a sanction is "just" depends specifically on whether the court warned petitioners that continued noncompliance with discovery orders would result in sanctions). Despite these opportunities, Mr. Groskop refused to comply with two orders compelling discovery and two orders awarding attorney fees. *See Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320–21 (10th Cir. 2011) ("the district court's considerable discretion in this arena easily embraces the right to dismiss or enter default judgment in a case under Rule 37(b) when a litigant has disobeyed two orders compelling production of the same discovery materials in its possession, custody, or control"). Compounding these failures, Mr. Groskop failed to prepare for the W.R.C.P. 30(b)(6) deposition and was unable to answer the most basic questions. *Gooder v. Roth*, 788 P.2d 611, 612 (Wyo. 1990) ("Rule 37(d), W.R.C.P., is explicit in permitting the entry of default judgment against one who fails to file answers to interrogatories or to excuse such failure." (citing *Zweifel v. State ex rel. Brimmer*, 517 P.2d 493, 498–99 (Wyo. 1974))); *see also Booth*, 447 P.2d at 500.

[¶47] The district court concluded dismissal was the only effective sanction. As then-Judge Gorsuch wrote in *Lee*:

> We have said that district courts enjoy "very broad discretion to use sanctions where necessary to insure . . . that lawyers and parties . . . fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial." *In re Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984) (en banc); *see also Patterson v. C.I.T. Corp.*, 352 F.2d 333, 336 (10th Cir. 1965). The Supreme Court has echoed this message, admonishing courts of appeals to beware the "natural tendency" of reviewing courts, far from the fray, to draw from fresh springs of patience and forgiveness, and instead to remember that it is the district court judge who must administer (and endure) the discovery process. *See Nat'l Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642, 96 S.Ct.

2778, [2780,] 49 L.Ed.2d 747 (1976). Commentators, too, have advised us to remember that "the district courts must have latitude to use severe sanctions for purposes of general deterrence." *See* Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice & Procedure § 2284, at 444.

*Lee*, 638 F.3d at 1320.

[¶48] The district court did not abuse its discretion when it concluded that the violations of two court orders compelling discovery, two orders awarding attorneys' fees, and the failure to fulfill the representative duties associated with W.R.C.P. 30(b)(6) required dismissal with prejudice.

[¶49] Affirmed.